FOUAD KIAMIE, as Executor of NAJEEB KIAMIE, Deceased, Respondent, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

First Department, November 12, 1943.

*James D. Ewing* of counsel (*Wm. G. H. Acheson* with him on the brief; *Alexander & Green,* attorneys), for appellant.

*Martin M. Kolbrener* for respondent.

GLENNON, J. This action was commenced by the executor of the estate of Najeeb Kiamie, deceased, to whom the defendant had issued its policy of life insurance on November 5, 1931. The policy, in the face amount of $5,000, was on the ordinary life plan and named as beneficiary "the Insured's executors or administrators." When issued the policy provided for the payment of an annual premium of $374.65, commencing with the date of issuance, and thereafter on November 4th in each year. At the request of the insured, on the next anniversary, the mode of payment of the premium was changed to the quarterly plan. Thereafter the insured paid the quarterly premium of $99.25 up to and including May 4, 1933. The quarterly premium of August 4, 1933, was not paid on its due date, nor within the grace period provided in the policy and under the laws of the State of New York. The insured died on November 7, 1933, in Syria.

The case was tried before a court and a jury. After instructing the jury as to a general verdict, the court submitted two questions in writing to the jury. They were as follows:

(1) Did defendant, The Equitable Life Assurance Society of the United States, on July 15, 1933, mail to the assured, Najeeb Kiamie, a premium notice as to the policy in suit for the quarterly premium due August 4, 1933, in the sum of $99.25, addressed to the assured at his last known address in New York State?

(2) Did Jamile Kiamie as the authorized representative of Najeeb Kiamie make a request on September 1, 1933, to an authorized representative of defendant for an application to be executed by him in connection with a loan he desired to make on the policy issued on the life of Najeeb Kiamie for the purpose of paying current premium and did such representative agree to forward said application to an address designated by Jamile Kiamie?

In answer to the first question, the jury decided unanimously in favor of the defendant, but it was unable to agree on the second question, and, as a consequence; no general verdict was rendered.

After both sides had rested, and before the charge, the defendant moved for a directed verdict in its favor and a dismissal of the complaint on the merits. The court reserved decision and an exception was duly taken by the defendant. When the jury failed to agree on the second question, the defendant again asked the court for a directed verdict in its favor. The court denied the motion and ordered that the case be returned to the

calendar for a new trial of all the issues except the issue with respect to mailing of the premium notice which was covered in the first question.

Plaintiff does not question the validity of the verdict on the first question. It is the contention of the plaintiff that defendant is estopped from asserting a forfeiture of the policy because it was the defendant's own wrong which delayed the payment of the premium until September 30, 1933. The evidence indicates that on September 30th a check, signed by Rose Kiamie, a daughter of the deceased, and Fouad Kiamie, a son, to cover payment of the premium due, was mailed to the defendant. Defendant admitted that it received this check on October 2, 1933, together with the premium notice. On October 5th the defendant wrote the deceased, after acknowledging receipt of the check, in part, as follows:

"We are obliged to hold this check, subject to your order, pending receipt of evidence of your continued good health, as the policy has lapsed for nonpayment of the premium within the period of grace permitted by the terms of the policy.

"In order that the matter of restoration may receive prompt consideration, will you please fill in, sign and return the enclosed Request for Reinstatement without delay. If it is satisfactory to our Medical Directors, a medical examination may be avoided."

Again under date of October 16th, the defendant's cashier wrote the following letter:

"In a recent letter we acknowledged receipt of your remittance tendered in payment of the premium noted above. In this letter we stated that your remittance was being held unused awaiting an application for reinstatement as the policy had lapsed for nonpayment of the premium within the time allowed.

"As the necessary application for reinstatement has not been received, we are returning your remittance herewith.

"Another request for reinstatement is enclosed and we shall be pleased to consider restoration upon its receipt, properly signed and completed, accompanied by a remittance to cover the overdue premium with interest at 5% per annum calculated from the due date to date of payment.

"We urge that you give this matter your immediate attention as unless the conditions outlined above are complied with without delay, it would be necessary for you to undergo a medical examination before reinstatement of the policy may be considered."

It is not contended by the plaintiff that the deceased, or any of his representatives, made any reply to the letters of the defendant dated above. In fact the testimony disclosed that during the period in question, the deceased was in Syria.

Plaintiff rests his claim of a so-called estoppel upon the testimony of Jamile, a son of the deceased. The latter asserted that on September 1, 1933, three days before the expiration of the grace period, he visited the offices of the defendant on Seventh Avenue, New York City. He entered the lobby and inquired from a gentleman in uniform where payments of premiums were made and thereupon was directed to go to the premium department. There he was advised to go to a teller, a short distance away, where there was a sign over the cage reading "Extension." With respect to the conversation he had with the defendant's representative at this window, he testified: "I told him that my father had told me to pay the premium on his policy by a loan on the policy and that I am one of his powers of attorneys. He asked me whether I had the policy with me. I told him I didn't, but I had the number of it. He asked me how old the policy was. I told him that the policy was — we were paying the fourth quarter of the second year. He told me that we couldn't loan any money on any policy under two years. I told him I understand that we can from experience, because I had worked in insurance and I know that we can borrow money for payment of premium, but not for a loan for cash. He took the number of the policy and left me for a few minutes, and after he came back he said, 'Well, can you sign for them?' I said, 'No, I am one of the powers of attorney and it needs three of us to sign.' He said, 'Where is your father?' I told him my father was in the old country. Then he said, 'All right, I will send those papers to you.' And I left."

According to this witness, he gave his address as 164 Atlantic Avenue, apparently in Brooklyn, but he never received any "papers." It appears that he, according to his own testimony, had been engaged in life, accident and health insurance as a business for some period of time prior to the date of his alleged visit to the defendant's office. What reason he could have had for not taking the papers with him for the purpose of having them signed by himself and the others who could have signed under their power of attorney, does not appear. It is not contended that the policy itself was produced by this witness, nor was the power of attorney exhibited to any employee of the defendant.

Furthermore, the policy in suit and the application therefor constituted the entire contract between the deceased and the defendant. The application provided in part: " I hereby agree that any policy issued hereon shall not take effect until the first premium thereunder has been paid during my good health; that no agent or other person except the President, a Vice-President, the Secretary, the Treasurer or a Registrar of the Society has power to make or modify any contract on behalf of the Society or to waive any of the Society's rights or requirements, and that no waiver shall be valid unless in writing and signed by one of the foregoing officers.'' That clause was not only binding upon the insured but also on his representatives. Even though the jury had answered the second question in favor of the plaintiff, we feel that the court would have been impelled to set aside the verdict and direct a verdict in favor of the defendant.

The order appealed from should be reversed, with costs and disbursements, and the motion for the direction of a verdict in favor of the defendant, pursuant to the provisions of section 457-a of the Civil Practice Act, granted.

DORE, COHN and CALLAHAN, JJ., concur; MARTIN, P. J., taking no part.

Order unanimously reversed, with costs and disbursements, and the motion for the direction of a verdict in favor of the defendant, pursuant to the provisions of section 457-a of the Civil Practice Act, granted. Settle order on notice.